**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**DM MANAGEMENT
TRANSPORTATION SERVICES,
INC.,**

        **Plaintiff,**

v.                                              **Case No: 6:22-cv-2291-PGB-LHP**

**US MATTRESS DEPOT and
DEAL BEDS, LLC,**

        **Defendants.**

_____/

## ORDER

This cause is before the Court on Plaintiff DM Management Transportation Services, Inc.'s ("**DM**") Motion to Enforce Settlement, Enter Judgment, and for Sanctions. (Doc. 31 (the "**Motion**")). Defendants US Mattress Depot and Deal Beds, LLC (collectively "**Defendants**") filed a response in opposition (Doc. 34), and DM submitted a reply thereto (Doc. 39; *see* Doc. 36 (granting leave of Court to file a reply)). Upon consideration, the Motion is due to be granted in part.

**I.**      **BACKGROUND**

DM sued Defendants for the alleged breach of a Services Agreement between the parties wherein DM provided logistics services to Defendants. (Doc. 1, ¶¶ 8–10). DM claims Defendants failed to pay invoices for services rendered. (*Id.* ¶ 13). On April 14, 2023, the Court entered a Case Management Scheduling Order, in which it established March 4, 2024 as the deadline for completion of discovery and

September 2024 as the trial term. (Doc. 23). The parties engaged in mediation on July 28, 2023, though unsuccessfully. (Doc. 30). The docket does not reflect any motion practice relating to discovery, and the parties never filed a notice of settlement. And yet on March 15, 2024, after the close of discovery, DM filed the instant Motion to enforce the settlement.

## II.     LEGAL STANDARDS

"Settlements are highly favored and will be enforced whenever possible." *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1318 (11th Cir. 2014) (quoting *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985)). The Court looks to Florida law to determine whether the parties reached an enforceable settlement agreement. *See Londono v. City of Gainesville*, 768 F.2d 1223, 1227 (11th Cir. 1985). Settlement agreements in Florida are interpreted and governed by the law of contracts. *Williams v. Ingram*, 605 So. 2d 890 (Fla. 1st DCA 1992). The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement. *Carroll v. Carroll*, 532 So. 2d 1109 (Fla. 4th DCA 1988), *rev. denied*, 542 So. 2d 1332 (Fla. 1989). To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element. *See, e.g., Don L. Tullis and Assoc., Inc. v. Benge*, 473 So. 2d 1384 (Fla. 1st DCA 1985).

Florida law does not automatically bar the enforcement of a contract where there is some amount of uncertainty. *See Brewster v. MSC Crociere, S.A.*, No. 14-

60991-CIV-SELTZER, 2015 WL 13389793, at *5 (S.D. Fla. June 11, 2015)[1] ("[T]he Florida Supreme Court has observed that '[a]ll agreements have some degree of indefiniteness and some degree of uncertainty.'"(quoting *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 409 (Fla. 1974))). Thus, the law in the Eleventh Circuit is clear that a court may enforce the terms of a settlement agreement when the parties have agreed upon all material terms, even when those agreements are oral. *See Brewster,* 2015 WL 13389793, at *3 (enforcing an oral settlement agreement and holding that enforcement of the agreement "extends not only to written settlement agreements, but to oral agreements as well"); *see also Welch v. North Am. Tank Line, Inc.*, No. 8:06-CIV-2340-T-17-MAP, 2008 WL 3982394, at *2 (M.D. Fla. Aug. 25, 2008).[2]

Even so, the party seeking to enforce the settlement agreement must establish that counsel for the opposing party was given the clear and unequivocal authority to settle the case by his or her client. *See, e.g.*, *Spiegel v. H. Allen Holmes, Inc.,* 834 So. 2d 295, 297 (Fla. 4th DCA 2002). The following factors should be considered in determining whether the client had given his counsel clear authority

---

[1] "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

[2] "[T]he physical act of signing a document is a mere formality where the parties clearly intended to be bound." *Reed By & Through Reed v. United States*, 717 F. Supp. 1511, 1517 (S.D. Fla. 1988), *aff'd*, 891 F.2d 878 (11th Cir. 1990). "[T]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs–not on the parties having meant the same thing but on their having said the same thing." *Blackhawk Heating*, 302 So. 2d at 407.

to settle the case: (1) whether the client knew his lawyer was in the process of negotiating a settlement; (2) whether and how many times the client met or spoke with his attorney while settlement negotiations were ongoing; (3) whether the client was present when a settlement is announced to the court; (4) whether the client immediately objected to the settlement; and (5) whether the client was an educated individual who understood the terms of the settlement. *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485–86 (11th Cir. 1994). The court in *Vital Pharmaceuticals, Inc. v. S.A.N. Nutrition Corp.*, No. 06-60646-CIV, 2007 WL 1655421, at *5 (S.D. Fla. June 6, 2007) observed that "[i]t is simply nonsensical to argue that [counsel for the opposing party] had the authority to make certain offers to [the movant] on behalf of his client, but not to enter into a binding agreement, when the making of an offer has the legal consequence of binding the offeror if that offer is accepted."

### III. DISCUSSION

After mediation ended in an impasse, the parties continued to negotiate a possible settlement. (Doc. 31, p. 2). In early August 2023, counsel for Defendants conveys to DM's lawyers that they are willing to pay $317,519.78 in settlement of claims filed by DM. (Doc. 34-1). Defendants condition settlement by stating they will not waive claims "such as, without limitation, insurance claims for lost or damaged goods." (*Id.*). DM rejects this offer by insisting on a mutual complete release of all claims and attorney's fees. (Doc. 34-2). By mid-September 2023, DM inquires if Defendants have a response to its counteroffer, and one month later,

Defendants respond that they can "pay the 317k, but they need 48 months to pay that amount. This would be in exchange for settlement of claims affirmatively brought by your client in this case." (Doc. 34-3). Three (3) months later, on January 18, 2024, counsel for DM responds and states he is authorized to settle the case if Defendants pay $158,500 in twenty (20) days and the balance over six (6) months with 12% interest, plus an agreement that breach will result in Defendants owing the full amount set forth in the complaint plus fees and costs.[3] (Doc. 34-4).

The back-and-forth common in negotiations continues with DM rejecting a new offer by Defendants to pay $200,000 with DM retaining the rights to insurance claims. (Doc. 34-5). Defendants counter and DM rejects the offer and counters with new terms. (Doc. 34-6). The negotiations continue through February 7, 2024, with no agreement reached. (Docs. 34-7 through 34-10). On February 9, 2024, DM sends an email to Defendants and announces:

> This case has been settled for the total sum of $317,000 as follows:
>
> 1.    All parties will enter into a complete and mutual release and settlement agreement of all claims and defenses made and those which could have been made arising out of the Services Agreement and the allegations in the Complaint which carries the following payment schedule:
>
>     a.    $120,000 payable on or before March 11, 2024; and

---

[3] It is evident from the email exchanges that the parties are also discussing the terms of settlement telephonically. (*See* Docs. 34-4, 34-5).

      b.      Equal payments of $16,420.00 on the first of every month commencing on April 1, 2024 with the final payment to be made on March 1, 2025; and

      c.      The payments shall be made payable to "DM Management Transportation Services, Inc." and delivered to me.

2.    There will be no grace period.

3.    In the event of any failure to make any payment, DM may file an affidavit of default to obtain a judgment in the amount of $640,214.91, less any payments made, plus any attorney's fees and costs associated with seeking judgment (incurred after entry into the complete and mutual release and settlement agreement).

4.    We will agree and ask the Court to retain jurisdiction to enforce the settlement and enter judgment if necessary.

5.    Each side will bear their own costs through execution of the complete and mutual release and settlement agreement.

I will send you the complete and mutual release and settlement agreement shortly; the payment schedule shall remain in place.

(Doc. 34-11).

In response to DM's settlement offer, Defendants' counsel responds, "Thank you. Will you be sending a draft agreement to me?" (Doc. 34-12). Defendants do not object to DM's statement that "[t]his case has been settled," and do not dispute the five (5) terms that make up the settlement agreement. (*Id.*). The "Mutual Confidential Settlement Agreement and Release" is emailed to Defendants on February 22, 2024. (Doc. 34-13). And Defendants' counsel asks for the agreement in Word "in case [he has] edits." (Doc. 34-14). Again, Defendants voice no objection

6

to the five (5) conditions or terms that make up the settlement agreement. (*Id.*). Two (2) days later, Defendants return a redline version of the Mutual Confidential Settlement Agreement and Release, with counsel stating, "Please see the attached redlines. *Basically nothing*. Just please confirm you're fine with this and I will send to the client, who has not reviewed it yet. Thx." (Doc. 34-15) (emphasis added). A few hours later, DM responds to the redline version of the settlement agreement by stating, "I accept your two changes and finalized the attached Release. Please have your clients execute it and return it to me for completion." (Doc. 34-16).

The essential terms of the settlement agreement were outlined by DM in their email dated February 9, 2024. (Doc. 34-11). Defendants' counsel was clearly authorized to negotiate on behalf of Defendants and had been actively engaged in settlement talks with DM for seven (7) months. (Docs. 34-1 through 34-29). During that time, Defendants' counsel rejected offers made by DM and tendered counteroffers leading up to the February 9, 2024 settlement agreement. (*Id.*). Defendants accepted the essential terms of the settlement agreement the same day that DM announced "[t]his case has been settled," followed by the specific terms of the agreement, by saying, "Thank you. Will you be sending a draft agreement to me?" (Doc. 34-12).

Defendants claim that no oral settlement agreement was reached on February 9, 2024, because their counsel stated in a subsequent email enclosing the redline changes that his client had not yet reviewed the changes. (Doc. 34, pp. 14–15). Defendants ignore the fact that the redline changes were "[b]asically nothing,"

7

that the redlines were immediately accepted by DM, and that they never objected to the specific terms of the settlement announced in the February 9, 2024 email from DM. (*See* Doc. 34). As noted in *Vital Pharmaceuticals*, "[i]t is simply nonsensical to argue that [Defendants' attorney] had the authority to make offers to [DM] on behalf of his client, but not to enter into a binding agreement." 2007 WL 1655421, at *5.

Applying the five (5) factors announced in *Murchison*, the Court also finds Defendants' counsel had the authority to settle the case on behalf of his client. 13 F.3d at 1485–86. Defendants knew counsel was actively engaged in negotiations since several offers and counteroffers were exchanged over seven (7) months after the failed mediation. *See id.*; (Docs. 34-1 through 34-29). Experienced counsel, as here, communicated with Defendants before making the counteroffers as shown from the email communications. *See Murchison*, 13 F.3d at 1485–86. Moreover, Defendants are corporate entities and thus, not lay persons lacking sophistication. *See id*. Finally, Defendants did not object to DM's proclamation that the case had settled, despite several email exchanges after DM's declaration. *See id*.

In Florida, an enforceable contract exists only if the parties to the contract have sufficiently defined all essential terms of the agreement. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1271 (11th Cir. 2009). "The creation of a contract requires that there be mutual assent to a certain and definite proposition." *ABC Liquors, Inc. v. Centimark Corp.*, 967 So. 2d 1053, 1056 (Fla. 5th DCA 2007). That said, "it is not necessary that all details of an agreement be fixed in order to have a binding

8

agreement between the parties." *Irby v. Mem'l Healthcare Grp.*, 901 So. 2d 305, 306 (Fla. 1st DCA 2005). Here, the February 9, 2024 email from DM accepted by the Defendants constitutes a clear understanding of the agreement, despite that it was subject to being reduced to writing later. (Docs. 34-11, 34-12); *Aldora Aluminum & Glass Prods., Inc. v. Poma Glass & Specialty Windows, Inc.*, 683 F. App'x 764, 767 (11th Cir. 2017). The essential terms of the agreement are specifically stated by DM in the email of February 9, 2024. (Doc. 34-11).

The Court notes that on February 7, 2024—two (2) days before DM's email stating the case has settled and stating the terms—Defendants' counsel wrote:

> I have just heard back from the client. They can agree to $120,000 within 30 days and the balance over 12 months with no interest. If there is a default, your client will be entitled to judgment for any unpaid balance. I have dealt with consent judgment in the event of default a lot (they are common in NY where I practice quite a bit) and I have never seen one that includes legal fees in the underlying settled case, and so that is not something we can agree to. Please let me know if we can settle on these terms.

(Doc. 34-10).

The terms of the settlement agreement outlined in the February 9, 2024 email mirror those suggested by Defendants' counsel, including DM dropping its demand that Defendants pay their attorney's fees incurred before execution of the mutual release and settlement agreement. (Doc. 34-11). Accordingly, counsel for Defendants fails to identify any essential term of the settlement that was not agreed upon or which differs from the February 9, 2024 offer. (*See* Doc. 34).

Had Defendants' counsel wanted to, he could have responded to DM's email of February 9, 2024 by stating that the case had not been settled and by stating his client would consider the offer. Instead, Defendants' counsel responded to DM's email by thanking opposing counsel and requesting the draft agreement. (Doc. 34-12). Thus empowered to negotiate on behalf of Defendants, counsel accepted the essential terms of the agreement. *See Junco v. Adventist Health Care Sys.*, No. 17-22634-COOKE/GOODMAN, 2019 WL 13257009, at *5 (S.D. Fla. July 26, 2019) (finding that external signs from the parties can reflect the existence of a binding and enforceable settlement agreement, and that continued negotiation over the non-essential terms settlement agreement is not evidence that an agreement has not been reached).[4]

After Defendants accepted DM's settlement offer, their counsel informed DM's attorney that "a number of points are not what they understood (and frankly I agree that a few items do need to be refined to conform to the agreement specifics)." (Doc. 34-16). DM's counsel responded by reminding opposing counsel that DM had accepted Defendants' edits and by declining to renegotiate the agreement. (Doc. 34-17). After several contentious email exchanges, Defendants proposed terms that materially varied from the agreement reached on February 9, 2024. (Doc. 34-21). The parties engaged in further conversation but failed to reach

---

[4]  The Court also notes that no objective evidence in the record suggests that the parties did not intend to be bound until the agreement was written down and fully executed. The agreement provides that it may be signed in counterparts. (Doc. 31-5, p. 9). It does not provide that the agreement is effective *only* when signed. (*See* Doc. 31-5); *see also Vital Pharms.*, 2007 WL 1655421, at *6–7.

a meeting of the minds over Defendants' proposed modifications to the February 9, 2024 agreement. (Docs. 34-22 through 34-29).

In summary, the essential terms of the settlement agreement were stated on February 9, 2024, in an email indicating the case has been settled. (Docs. 34-11, 34-12). Counsel for Defendants was clearly authorized to negotiate on their behalf, had been doing so for seven (7) months, and accepted the settlement offer by thanking DM's counsel and asking for the draft agreement. (Docs. 34-1 through 34-29). At that point, the parties reached a binding and enforceable settlement agreement. (Doc. 34-12). Defendants failed to object to DM's assertion that the case had settled or the essential terms of the agreement. (*See id.*). Because the reduction of a settlement agreement to writing is a mere formality, once Defendants accepted DM's terms, an enforceable agreement was reached. Defense counsel's statement that his client needed to review the agreement is different from having informed DM that the terms were not acceptable or that the matter had not been settled. Defendants' attempt to renegotiate the settlement after the fact is not a counteroffer and does not signify a failure to agree.

## IV.   CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Enforce Settlement, Enter Judgment, and for Sanctions (Doc. 31 (the "**Motion**")) is **GRANTED IN PART** to the extent Plaintiff requests the Court to enforce the settlement and enter judgment. The Motion is otherwise **DENIED**.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff DM Management Transportation Services, Inc. and against Defendants US Mattress Depot and Deal Beds, LLC in the amount of $640,214.91.

3. The Court retains jurisdiction over this matter to enforce the parties' settlement agreement and to consider Plaintiff's request for attorney's fees and costs incurred since March 12, 2024.

4. The Clerk of Court is **DIRECTED** to terminate any pending motions (Docs. 42, 45) and to thereafter close the file.

**DONE AND ORDERED** in Orlando, Florida on July 22, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties